IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CATHEDRAL OF HOPE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:07-CV-1555-D |
| VS. | § | |
| | § | |
| FEDEX CORPORATE SERVICES, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Cathedral of Hope ("CH") and defendant Federal
Express Corporation ("FedEx") each move for summary judgment in
this suit arising from a mis-delivered package. FedEx also moves
for leave to amend its answer. For the reasons that follow, the
court denies CH's motion, grants in part and denies in part FedEx's
summary judgment motion, and grants FedEx's motion for leave to
amend its answer.

I

CH sues FedEx, alleging that it is liable for various losses
arising out of a mis-delivered package. Ceridian Payroll Services
("Ceridian") contracted with FedEx to deliver to CH a package
containing payroll checks and related documents. Ceridian
completed a FedEx Airbill for the delivery of the package. The
Airbill incorporated by reference the terms of the FedEx Service
Guide ("Service Guide"), which in turn contained the following
liability limitation clause: "With respect to U.S. express package
services, unless a higher value is declared and paid for, our

liability for each package is limited to US $100." P. App. 16. Ceridian declared a $1.00 value for the package. D. App. 49

A FedEx driver who had previously made deliveries to CH transported the package to CH's office. As the driver was approaching the entrance, an unknown person in the parking lot informed the driver that he would sign for, and accept delivery of, the package. The driver delivered the package to this individual. The package included payroll checks and stubs for about 35 CH employees, and personal and financial information. CH later discovered that the payroll checks had been cashed, accounts and charge accounts had been opened using employees' personal information, employees' accounts had been overdrawn, and a forged driver license had been obtained. According to CH, this resulted in various expenses, including the purchase of identity theft insurance, replacement of the payroll, reimbursement of expenses related to the overdrafts, late charges, and fees associated with the fraudulent accounts. CH first filed a claim with FedEx for its losses, and then filed this suit in state court. FedEx removed the case to this court based on diversity of citizenship.

CH now moves for summary judgment, contending that FedEx breached its contract with Ceridian under the terms of the Service Guide, and that as an intended third-party beneficiary of the contract, CH is entitled to recover $20,000 in contractual damages and $15,000 in attorney's fees. Alternatively, to the extent the

liability limitation provision of the Service Guide is enforceable, CH seeks $100 in damages and $15,000 in attorney's fees.

FedEx responds that CH's claims are preempted by the Airline Deregulation Act of 1978 ("ADA"), and that FedEx's liability is limited to $100. CH replies that FedEx is estopped from invoking the Service Guide's liability limitation provision because FedEx made pre-lawsuit verbal offers to settle CH's claim for an amount in excess of the $100, and CH relied on these offers to its detriment. Alternatively, CH contends that FedEx waived invocation of the contractual liability limitation through its pre-suit offers.[1]

FedEx also moves for summary judgment, contending that CH's claims, its request for attorney's fees, and its equitable estoppel and waiver defenses are preempted, and that its liability for breach of contract is limited to $100.[2]

---

[1]CH does not distinguish between the doctrines of equitable estoppel and waiver. It primarily invokes the term equitable estoppel, but appears to use the terms interchangeably. "Although waiver and estoppel are sometimes used interchangeably, . . . there is a subtle but significant legal distinction between the two." *Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991). The court will therefore analyze the two doctrines separately.

[2]On April 30, 2008 CH filed a request for additional settlement conference, in which it asks the court to order the parties to participate in a second settlement conference before ruling on the pending summary judgment motions. Although the court encourages the parties to settle the case if they can, it notes that they have already attempted unsuccessfully to settle the case through prior negotiations. Moreover, the court's rulings on their pending motions may assist them in resolving the case by guiding their discussions of the potential merits of their claims and

The court first considers CH's motion for summary judgment on its breach of contract claim.

CH maintains that it is an intended third-party beneficiary of the Airbill between Ceridian and FedEx, which incorporates the Service Guide. It alleges that FedEx breached the contract when it negligently delivered the package, and that it has performed all conditions precedent to recovery under the contract, such as notifying FedEx of its mis-delivery claim and providing FedEx all requested supporting information within the required period.

FedEx principally responds by invoking the $100 liability limitation, but it does not explicitly rebut the merits of CH's breach of contract claim. FedEx does, however, point to the following liability limitation provision of the Service Guide:

> [FedEx] will not be liable for, nor will any adjustment, refund or credit of any kind be given as a result of, any loss, damage, delay, misdelivery, nondelivery, misinformation or failure to provide information caused by or resulting in whole or in part from:
> . . .
> D. Perils of the air, public enemies, *criminal acts of any person(s)* . . . .

D. App. 15 (emphasis added).

Because CH will bear the burden of proof at trial on its breach of contract claim, to obtain summary judgment, it "must

_____

defenses. The court therefore denies CH's request.

establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This court has noted that the "beyond peradventure" standard is "heavy." *See, e.g., Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.).

B

CH's claim for damages is based on its assertion that FedEx "delivered the package to a thief," P. Br. 15, who, in turn, engaged in criminal acts that caused the various expenses and lost time that CH now seeks to recover from FedEx. At a minimum, CH has failed to demonstrate beyond peradventure that the Service Guide provision that exempts FedEx from liability for damages arising out of criminal acts does not defeat its breach of contract claim. To the extent this provision applies to this case, FedEx cannot be held liable to CH for breach of contract.

The court holds that CH is not entitled to summary judgment on its breach of contract claim because it has not established beyond peradventure that FedEx is liable under the terms of the Service Guide.

The court next addresses the question whether CH's claims are preempted under federal law. FedEx contends that CH's state-law claims of negligence and gross negligence, its estoppel and waiver defenses, and its statutory claim for attorney's fees are all preempted and must be dismissed.

A

"It is beyond question that, by enacting the ADA, Congress intended to preempt aspects of state law that govern air carriers." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 561 (N.D. Tex. 2005) (Fitzwater, J.). Section 41713(b)(1) provides:

> Except as provided in this subsection, a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1).[3] "The Supreme Court reads broadly the 'related to' language of this section and, in turn, the preemptive effect of the ADA." *Am. Airlines*, 370 F.Supp.2d at 561 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("The ordinary meaning of [relating to] is a broad one . . . and the words thus express a broad pre-emptive purpose.")). "Laws of

---

[3]"Earlier cases refer to § 1305(a), which was recodified in 1994 with slight, nonsubstantive changes in language. For example, § 1305(a) uses 'relating to' rather than 'related to,' as does § 41713(b)(1)." *Am. Airlines*, 370 F.Supp.2d at 561 n.18 (citation omitted).

general applicability may be preempted by the ADA; they need not actually prescribe airline prices, routes, or services." *Id.* (citing *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc)). "Moreover, 'ADA preemption is not limited to claims brought directly against air carriers. Rather, claims are preempted if they "relate to" the prices, routes or services of an air carrier.'" *Id.* at 561-62 (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 287 n.8 (5th Cir. 2002)). "Nor is preemption limited to state laws or regulations." *Id.* at 562. "Not all claims that may have economic repercussions, however, are sufficiently related to an airline's prices, routes, or services to be preempted." *Id.* "[S]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner to have pre-emptive effect." *Id.* (brackets in original; internal quotation marks omitted) (quoting *Morales*, 504 U.S. at 390 ).

B

The court considers first whether CH's negligence and gross negligence claims are preempted by the ADA.

1

Before reaching the merits, the court must address a preliminary question. In CH's response to FedEx's summary judgment motion, CH states that "[b]y this pleading, [CH] non suits, without prejudice, its claims of negligence and gross negligence." P. Resp. Br. 1. The court interprets this statement to be a motion

for voluntary dismissal under Fed. R. Civ. P. 41(a)(2). *See, e.g., EEOC v. Fenyves & Nerenberg, M.D. P.A.*, 1999 WL 134279, at *1 n.2 (N.D. Tex. Mar. 9, 1999) (Fitzwater, J.) (noting that term "non-suit" is found in Tex. R. Civ. P. 162 but is not used in federal procedure). To decide whether CH should be permitted to dismiss its negligence and gross negligence claims, the court considers the factors addressed in *Radiant Technology Corp. v. Electrovert USA Corp.*, 122 F.R.D. 201, 203-04 (N.D. Tex. 1988) (Fitzwater, J.) (considering various factors in determining whether to grant dismissal, the principal one of which "is whether the dismissal would prejudice the defendant."). *See EEOC*, 1999 WL 134279, at *1.

"Outright dismissal should be refused . . . when a plaintiff seeks to circumvent an expected adverse result. In such an instance the defendant is legally prejudiced because it is unable to obtain a determination——or at least an earlier determination——of the merits of plaintiff's claims." *Radiant Tech.,* 122 F.R.D. at 203-04 (citation omitted). Allowing CH to dismiss these claims without prejudice would in fact unduly prejudice FedEx by exposing it to the possibility of a refiled suit. Moreover, for reasons the court will now explain, CH's gross negligence and negligence claims must be dismissed as preempted under the ADA. Consequently, the court in its discretion declines to dismiss these claims without prejudice, and it will instead decide whether they are preempted.

In a case similar to this one, this court held that a plaintiff's negligence and gross negligence claims for loss of a commercial package were preempted under the ADA. *See Trujillo v. Am. Airlines, Inc.*, 938 F. Supp. 392 (N.D. Tex. 1995) (Fitzwater, J.), *aff'd*, 98 F.3d 1338 (5th Cir. 1996) (per curiam) (unpublished table decision). Reasoning that the acts the plaintiff complained of——the preparation of the waybill and the delivery of the package——were services withing the meaning of § 41713(b)(1), the court concluded that "plaintiff's [negligence, gross negligence, and deceptive trade practices] claims would affect [the carrier's] provision of air shipment services 'in their economic or contractual dimension' and are thus preempted." *Id.* at 394 (citing *Smith v. Am. W. Airlines, Inc.,* 44 F.3d 344, 347 (5th Cir. 1995) (en banc)). The court explained that

> [p]laintiff's breach of contract claim was the means by which he could enforce the agreement for services he made with American. He may not cast his claims as ones for negligence or deceptive trade practices to extend his recovery beyond the terms of the contract. To do so would frustrate Congress' intent to deregulate the airline industry.

*Id.* at 394.

Applying the reasoning of *Trujillo*, the court holds that CH's breach of contract claim is the means by which it can enforce any rights as a third-party beneficiary of the agreement (i.e., the Airbill) between Ceridian and FedEx. The court therefore concludes

that CH's negligence and gross negligence claims are preempted and must be dismissed with prejudice.

C

The court next considers whether CH is precluded from relying on equitable estoppel or waiver to establish a breach of contract claim that is not subject to the liability limitation of the Service Guide.

1

CH contends that FedEx is foreclosed by the doctrines of equitable estoppel and/or waiver from invoking the liability limitation clause of the Service Guide, and is therefore liable for the full amount of CH's damages. FedEx does not argue that CH's breach of contract claim is preempted; it instead contends that CH is precluded by ADA preemption from relying on equitable estoppel or waiver because, through these doctrines, CH is effectively attempting to enlarge or enhance its contractual rights by resorting to Texas state law or policy.[4] In support, FedEx primarily relies on the Supreme Court's decision in *American*

---

[4]FedEx also argues in its reply brief that the terms of the Service Guide only allow an officer in the Legal Department of FedEx to authorize modifications to the contract. FedEx avers that no such authorization was given, and that the Service Guide's limitation of liability could not have been waived, as CH asserts. Because FedEx raised this argument for the first time in its reply brief, the court will not consider granting summary judgment on this basis. *See, e.g., Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.) (holding that court will not consider argument raised for first time in reply brief).

*Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33 (1995), in which the
Court explained:

> The ADA's preemption clause . . . stops States
> from imposing their own substantive standards
> with respect to rates, routes, or services,
> but not from affording relief to a party who
> claims and proves that an airline dishonored a
> term the airline itself stipulated. This
> distinction between what the State dictates
> and what the airline itself undertakes
> confines courts, in breach-of-contract
> actions, to the parties' bargain, with no
> enlargement or enhancement based on state laws
> or policies external to the agreement.

*Id.* at 232-33.

In response, CH cites the Fifth Circuit's decision in *Lyn-Lea
Travel* for the proposition that the doctrines of equitable estoppel
and waiver are core contract concepts and thus do not violate
*Wolens*.

2

In *Lyn-Lea Travel* a Fifth Circuit panel considered whether a
fraudulent inducement defense to the enforcement of a contract
would have been preempted under *Wolens*. After noting *Wolens'*
admonition that "some state-law principles of contract law . . .
might well be preempted to the extent they seek to effectuate the
State's public policies, rather than the intent of the parties,"
*Wolens*, 513 U.S. at 233 n.8, the panel concluded that the
fraudulent inducement defense did not reflect a state policy
seeking to expand or enlarge the parties' agreement and was thus
not preempted by the ADA. *Lyn-Lea Travel,* 283 F.3d at 289-90. The

panel reasoned that when pleaded as a defense to a contract, fraudulent inducement is related to the fundamental issue of mutual assent in contract formation. It noted the reasoning in *Wolens* that "because contract law is, at its 'core,' uniform and non-diverse, there is little risk of inconsistent adjudication of contractual obligations" to conclude that fraudulent inducement is among those core concepts because it relates to the validity of mutual assent. *Id.* CH argues that equitable estoppel similarly is a core contract concept, and, under the reasoning of *Lyn-Lea Travel*, is not preempted by the ADA.

The Fifth Circuit has not addressed whether the defenses of equitable estoppel or waiver are preempted in a breach of contract case. The court is unaware of any Fifth Circuit authority that analyses this issue, particularly in a context such as this one, where the doctrines are not invoked as defenses to contract formation, as in *Lyn-Lea Travel*, and where the party raising the doctrines is not relying on them to enforce its rights under the contract, but rather to prevent the opposing party from invoking a contractual liability limitation.[5] The court need not decide,

---

[5]A Seventh Circuit decision suggests that, in these circumstances, these defenses might be preempted. In *Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379 (7th Cir. 2007), the Seventh Circuit rejected the plaintiff's reliance on various state-law doctrines. Although not specified in the opinion, the plaintiff appeared to invoke state-law doctrines that included equitable estoppel and waiver. *Treiber & Straub* reasoned that "[t]he problem is that this case is only nominally about a shipper seeking to *enforce* a contract that it contends UPS breached. In reality, [the

- 12 -

however, whether CH's reliance on equitable estoppel or waiver is preempted, because even assuming that these defenses are not preempted under the ADA, for the reasons explained *infra* at § IV, the court raises *sua sponte* that FedEx is entitled to summary judgment dismissing these defenses on the merits.

IV

A

FedEx argues that "even were Plaintiff's estoppel contention not preempted by the ADA, it would still fail as a matter of law. Any pre-suit "'verbal offer' to settle in 'excess of the limitation of liability' clearly does not bar FedEx from relying on its contractual rights in this action." D. Br. 9 n. 5.[6] FedEx does not specifically contend, however, that it is entitled to summary judgment on this basis. Because FedEx only moves for summary judgment on the basis that the equitable estoppel and waiver doctrines are preempted, but has not with sufficient clarity moved for summary judgment to dismiss these defenses on the merits, it

───────────────

shipper] wants to use state law to *avoid* the part of the contract that limits the carrier's liability. Its claim is therefore not for the conventional breach of contract contemplated in *Wolens*." *Id*. at 386-387. The panel concluded that the shipper "cannot prevail unless we were to require 'enlargement or enhancement [of the contract] based on state laws or policies external to the agreement.'" *Id*. at 387.

[6]Although FedEx only relates this argument to CH's equitable estoppel defense, the court considers it to be intended as well to CH's reliance on the waiver doctrine, given CH's interchangeable use of the terms and primary use of the term "equitable estoppel." *See supra* note 1.

would be error to grant summary judgment in FedEx's favor on the merits. *See, e.g., John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987) (holding that it is error to grant summary judgment on ground not raised). The court will, however, raise *sua sponte* that FedEx is entitled to summary judgment on the merits dismissing CH's equitable estoppel and waiver defenses. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *9 (N.D. Tex. Mar. 14, 2006) (holding that court is permitted to raise summary judgment *sua sponte*, provided it affords nonmovant notice and a fair opportunity to file an opposition response) (citing *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991)).

B

CH contends that FedEx is equitably estopped from invoking the $100 liability limitation because it made pre-suit verbal offers to settle CH's claim for amounts in excess of $100, and CH detrimentally relied on these offers.

> Under Texas law, to establish equitable estoppel, the party with the burden of proof must show that (1) the opposing party made a false representation or concealment of facts; (2) such representation or concealment was made with knowledge, actual or constructive, of those facts; (3) the representation or concealment was made with the intention that it be acted upon; (4) such representation or concealment was made to a party without knowledge or the means of knowledge, of such facts; and (5) the party to whom the misrepresentation was made relied on it to his detriment.

- 14 -

*Trinet Corp. Realty Trust Inc. v. Microsoft Corp.*, 2004 WL 1217936, at *7 (N.D. Tex. June 2, 2004) (Fitzwater, J.) (citing *Johnson & Higgins of Tex., Inc. v. Kennco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998)). Although neither party addresses the Texas-law elements of equitable estoppel, the court concludes as a matter of law, based on the present summary judgment record, that CH cannot establish each of these elements.[7]

The court notes initially that CH does not precisely identify what constitutes FedEx's false representation or concealment of facts. It appears at one point that CH is attempting to argue that FedEx concealed the existence of the $100 liability limitation contained in the Service Guide. *See* P. Br. 16 ("FedEx knew all along of the limits of liability contained in the Service Guide, but never presented these limitations to [CH]."). CH has failed to adduce evidence, however, that would permit a reasonable jury to find that making a pre-suit verbal offer in excess of a contractual liability limitation constitutes concealment of this contractual provision. CH has not presented summary judgment evidence from which a reasonable jury could find that FedEx concealed or made any false representations regarding the liability limitation contained in the Service Guide.

Moreover, even if FedEx's conduct in offering to settle the

_____

[7]CH's failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N. D. Tex. 2007) (Fitzwater, J.).

claim in excess of the contractual limitation could be considered a concealment of this contractual provision, CH's reliance on equitable estoppel fails because a reasonable jury could not find that "such representation or concealment was made to a party without knowledge or the means of knowledge, of such facts." *Trinet Corp. Realty*, 2004 WL 1217936, at *7. A reasonable jury could only find that CH knew, or had the means of knowing, about the contractual liability limitation, because it is contained in the Service Guide that forms the basis of FedEx's contractual obligation that CH seeks to enforce as a third-party beneficiary. *See Barfield v. Howard M. Smith Co.,* 426 S.W.2d 834, 838 (Tex. 1968) ("Where the real facts were known to a person or were open for his convenient ascertainment, he was not justified in relying on representation pertaining thereto and he cannot effectively say that he was misled or deceived by such representations." (citation omitted)).

CH also argues that a "party who intends to rely on a limitations of liability provision may not deceive another and lead them to believe that the party does not intend to enforce the provision . . . ." P. Reply 4-5. Here, CH appears to argue that the false representation or concealment is FedEx's intent to rely on the liability limitation to defeat CH's entitlement to recover more than $100 in a lawsuit against FedEx. But CH acknowledges that FedEx's offer was not made in the context of pending or

threatened litigation.  It is common knowledge that parties who do not believe they are liable for what the plaintiff seeks (or believe they are not liable at all) often make business decisions to settle such claims.  A reasonable jury could not find that FedEx, through its pre-suit settlement offer, falsely represented or concealed its intent to invoke this contractual provision if CH brought a lawsuit against it.

Even if CH could satisfy the requirement that it prove a falsely representation or concealment of fact, "estoppel requires a reasonable or justified reliance on the conduct or statements of the person sought to be estopped by the person seeking the benefit of the doctrine." *Fiengo v. Gen. Motors Corp.,* 225 S.W.3d 858, 861-62 (Tex. App. 2007, no pet.).  CH essentially posits that, to preserve FedEx's right to invoke the $100 liability limitation in litigation, it was required to assert the limitation affirmatively in settlement offer to CH.  *See* P. Br. 16 ("[When FedEx addressed CH's claim, it] should have urged its limitation of liability, but did not.  It did not reserve its right to enforce [this provision])."  CH has not adduced any evidence that would permit a reasonable jury to find that FedEx expressed any intent *not* to invoke the liability limitation if CH's claim proceeded to litigation.  Therefore, no reasonable jury could find that CH reasonably relied on FedEx's pre-suit offers to conclude that FedEx did not intend to invoke its contractual right, if CH's claim

resulted in CH's filing a lawsuit.

C

CH also contends that FedEx's pre-suit offers "can also be described as a waiver of limitations of liability." *Id*. Under Texas law, waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam) (quoting *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)). "The elements of waiver are: (1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) actual intent to relinquish the right, which can be inferred from conduct." *First Interstate Bank of Ariz., N.A. v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir. 1991) (citation omitted).

CH has not presented evidence of an express intent to waive the liability limitation. The court therefore evaluates whether a reasonable jury could find implied waiver. "Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be *clearly demonstrated* by the surrounding facts and circumstances." *Jernigan*, 111 S.W.3d at 156 (emphasis added) (citation omitted). As explained above, FedEx's pre-litigation settlement offer for more than $100 can be explained for commonly recognized business reasons, none of which would enable a reasonable jury to infer that FedEx intended to waive its

contractual rights. The court recognizes that waiver is principally an issue of the intent of the party possessing the right. *See Holloway v. HECI Exploration Co. Employees' Profit Sharing Plan*, 76 B.R. 563, 573 (N.D. Tex. 1987) (citing *Young v. Amoco Prod. Co.*, 610 F. Supp. 1479, 1489 (E.D. Tex. 1985), *aff'd*, 786 F.2d 1161 (5th Cir. 1986)), *aff'd*, 862 F.2d 513 (5th Cir. 1988). And the court understands that, under Texas law, questions such as intent are considered inherently to be for the trier of fact. *Id*. But a summary judgment nonmovant cannot simply rely on the allegations of its pleadings to defeat summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). It must present sufficient evidence to create a genuine fact issue. *Id.*; *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). A fact issue is genuine, however, only if a reasonable jury could return a verdict in favor of the party who has the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, no reasonable jury could find that the surrounding facts and circumstances clearly demonstrate that FedEx intended to waive its right to invoke the liability limitation in the context of a lawsuit by CH against FedEx.

D

The court therefore holds that CH has failed to introduce evidence that would permit a reasonable jury to find that CH has satisfied the elements of equitable estoppel or waiver.

Accordingly, the court raises *sua sponte* that FedEx is entitled to summary judgment dismissing these defenses to the invocation of the $100 liability limitation. If CH desires to oppose summary judgment on this basis, it must file a supplemental brief, and an appendix that contains any supporting evidence, within 30 days of the date this memorandum opinion and order is filed. If it does not, the court will grant summary judgment in favor of FedEx limiting CH's claim for contractual damages to $100. If CH does respond, the court will determine whether to request a reply brief from FedEx.

V

A

Finally, the court turns to CH's request for attorney's fees. CH moves for summary judgment, contending that it is entitled to $15,000 in attorney's fees based on FedEx's breach of contract. FedEx moves for summary judgment dismissing the attorney's fees claim. It maintains that, even if it is liable for breach of contract, CH's attorney's fees request is preempted. Because the court has held that CH is not entitled to summary judgment establishing its right to recover for breach of contract, *see supra* at § II, the court need only address whether CH's claim for attorney's fees is preempted, i.e., whether FedEx is entitled to summary judgment on this issue.

B

CH seeks attorney's fees under Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1997), which provides for the recovery of reasonable attorney's fees on an "an oral or written contract" claim. FedEx contends that this statutory claim for attorney's fees is preempted by federal law. In response, CH cites *Samtech Corp. v. Federal Express Corp.*, 2004 U.S. Dist. LEXIS 27130, at *1 (S.D. Tex. Mar. 14, 2004), in which the court considered the same issue and held that "[a] state statute permitting recovery of attorney's fees is 'too tenuous, remote, or peripheral' to be subject to preemption." *Id.* at *30 (quoting *Morales*, 504 U.S. at 390). "Such a statute neither references nor imposes any substantive obligations on airline practices." *Id.* The court reasoned that "[b]ecause *Wolens* exempts the underlying breach of contract claim from preemption, a statute permitting a party to seek attorney's fees for litigating that claim is exempted as well." *Id.* at *31.

The court agrees with *Samtech* and therefore holds that CH's statutory claim for attorney's fees is not preempted by federal law. FedEx's contention that attorney's fees are preempted is conclusory and unsupported by any legal authority.[8] Accordingly,

---

[8]FedEx responds to CH's argument by simply pointing to *Samtech Corp. v. Fed. Express Corp.,* 2004 U.S. Dist. LEXIS 27123, at *1 (S.D. Tex. May 28, 2004), in which the court reconsidered its earlier ruling and dismissed the plaintiff's breach of contract claim. Although this later ruling effectively precluded an

the court holds that FedEx is not entitled to summary judgment dismissing CH's statutory claim for attorney's fees.

## VI

The court now turns to FedEx's motion for leave to amend its answer.

Because FedEx's March 21, 2008 motion for leave to amend was filed before the May 1, 2008 deadline for filing such motions, the court applies a "presumption of timeliness." *Poly-Am., Inc. v. Serrot Int'l Inc.*, 2002 WL 206454, at *1 (N.D. Tex. Feb. 7, 2002) (Fitzwater, J.). The court also follows the liberal standard of Rule 15(a)(2). *See S & W Enters. L.L.C. v. Southtrust Bank of Ala., N.A.,* 315 F.3d 533, 536 (5th Cir. 2003). Under Rule 15(a)(2), "[t]he court should freely give leave when justice so requires."

CH did not respond to FedEx's motion, and the court discerns no reason to deny granting leave under the liberal standard of Rule 15(a)(2). Accordingly, the court grants FedEx's motion for leave to amend its answer. FedEx must file its amended answer—electronically or on paper—within five business days of the date this memorandum opinion and order is filed.

---

attorney's fee award, the court did not reconsider its previous attorney's fee analysis, nor did its reconsideration in any way undermine the reasoning of that section of the opinion.

*     *     *

Accordingly, the court denies CH's February 21, 2008 summary judgment motion, grants in part and denies in part FedEx's March 21, 2008 motion for summary judgment, and grants FedEx's March 21, 2008 motion for leave to amend answer. The court raises *sua sponte* that FedEx is entitled to summary judgment dismissing CH's equitable estoppel and waiver defenses to FedEx's invocation of the $100 limitation of liability provision in the Service Guide, and it directs CH to respond as set forth *supra* at § IV(D). The court denies CH's April 30, 2008 request for additional settlement conference.

**SO ORDERED.**

May 30, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE